Scott Edward Cole, Esq. (S.B. #160744)
Andrew Daniel Weaver, Esq. (S.B. #318935)
**SCOTT COLE & ASSOCIATES, APC**
1485 Civic Court, Suite 1500
Concord, California 94520
Telephone: (925) 355-5200
Facsimile:  (925) 887-4454
Email:   scole@scalaw.com
Email:   aweaver@scalaw.com
Web:     www.scalaw.com

Attorneys for Plaintiff Keith Tyner
and the Putative Classes

*(additional counsel appearing on next page)*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| PERRY WADLER, GERALD SPRINGER, TROY WILLIS, KEITH TYNER, ARMEN ABGARYAN and RAY PAIVA, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>vs.<br><br>CUSTARD INSURANCE ADJUSTERS, INC.,<br><br>            Defendants. | **Case No.: 3:17-cv-05840-WHO**<br>**Case No.: 3:18-cv-02768-WHO**<br>**Case No.: 3:18-cv-05487-WHO**<br>**Case No.: 3:18-cv-04670-EDL**<br><br>**CLASS ACTION**<br><br>[Assigned for all purposes to the Honorable William H. Orrick III]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 355-5200

1   Greg K. Hafif, Esq. (S.B. #149515)
    Michael G. Dawson, Esq. (S.B. #150385)
2   **LAW OFFICES OF HERBERT HAFIF, P.C.**
    269 West Bonita Avenue
3   Claremont, California 91711
    Telephone: (909) 624-1671
4   Facsimile:  (909) 625-7772
    Email:  ghafif@hafif.com
5   Email:  mgdawson@hafif.com

6   Larry A. Sackey, Esq. (S.B. #54474)
    **LAW OFFICE OF LARRY A. SACKEY**
7   11500 W. Olympic Blvd., Suite 550
    Los Angeles, California 90064
8   Telephone: (310) 575-4444
    Facsimile:  (310) 575-4520
9   Email:  lsackey@sackeylaw.com

10  Attorneys for Plaintiff Armen Abgaryan

11  Joshua D. Boxer, Esq. (S.B. #280126)
    **MATERN LAW GROUP, PC**
12  1230 Rosecrans Avenue, Suite 200
    Manhattan Beach, California 90266
13  Telephone: (310) 531-1900
    Facsimile:  (310) 531-1901
14  Email:  mmatern@maternlawgroup.com
    Email:  jboxer@maternlawgroup.com
15
    Corey B. Bennett, Esq. (S.B. #267816)
16  **MATERN LAW GROUP, PC**
    One Market Plaza, Spear Tower, Suite 3676
17  San Francisco, California 94105
    Telephone: (415) 990-8390
18  Facsimile:  (310) 531-1901
    Email:  cbennett@maternlawgroup.com
19
    Attorneys for Plaintiffs Perry Wadler, Gerald Springer Jr.,
20  Troy Willis and Ray Paiva

21

22

23

24

25

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 285-3200

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

# TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................................x

RELIEF SOUGHT ............................................................................................................x

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

I.    INTRODUCTION .................................................................................................1

II.   STATEMENT OF FACTS ....................................................................................2

    A.  The Parties ......................................................................................................2

    B.  Nature of the Case ..........................................................................................8

    C.  Procedural History ..........................................................................................8

    D.  Discovery and Investigation .........................................................................12

    E.  Settlement Negotiations ................................................................................12

III.  THE SETTLEMENT ..........................................................................................13

    A.  The Classes ...................................................................................................13

    B.  Settlement Terms ..........................................................................................13

    C.  The Release ...................................................................................................17

    D.  Class Notice ..................................................................................................18

        1.   Notice to Class Members ......................................................................19

        2.   Objections ..............................................................................................20

IV.  THE SETTLEMENT MEETS THE PRELIMINARY APPROVAL STANDARD ........20

    A.  Judicial Approval of FLSA Collective Action Settlements ..........................20

        1.   Conditional Certification of the FLSA Collective Action is Proper ....21

        2.   The Collective and Class Actions Can Proceed Simultaneously ..........22

    B.  Judicial Approval of Class Action Settlements ............................................22

        1.   The Settlement Amount Represents A Substantial Recovery................23

        2.   The Proposed PAGA Payment to the LWDA is Reasonable ................24

        3.   The Settlement Was Reached After Informed, Arm's Length Negotiations ........26

        4.   The Settlement Does Not Suffer from Any Obvious Deficiencies........27

        5.   The Settlement's Differentiated Relief Is Based on Objective Criteria................27

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 335-5200

6.  The Settlement Falls within The Range of Possible Approval .........................29

C.  The Settlement Meets the Rule 23 Factors ................................................................30

1.  The Class Is Sufficiently Numerous ................................................................31

2.  The Commonality Requirement Is Met ...........................................................31

3.  The Typicality Requirement Is Met.................................................................32

4.  The Adequacy Requirement Is Met .................................................................33

5.  Common Issues Predominate Over Individual Issues .....................................33

6.  Class Settlement Is Superior to Other Methods of Resolution .......................34

V.  THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE ....................36

VI. CONCLUSION..................................................................................................................37

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 855-9000

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

**TABLE OF AUTHORITIES**

**CASES**                                                               **Pgs.**

*Alvarado v. Nederend,*
  2011 WL 90228 (E.D. Cal. Jan. 11, 2011) ....................................................22

*Adams v. Inter-Con Sec. Sys., Inc.,*
  242 F.R.D. 530 (N.D. Cal. 2007) ..................................................................20

*Akaosugi v. Benihana Nat. Corp.,*
  No. C 11–01272 WHA, 2013 WL 269083, at *4 (N.D. Cal. Jan. 24, 2013) ........16

*Allen v. Caine & Weiner Company, Inc.*
  (July 19, 2011) Los Angeles Superior Court, Case No. BC464979 ....................25

*Ambrose v. Associated Ready Mixed Concrete, Inc.*
  (Oct. 19, 2015) Los Angeles Superior Court, Case No. BC598309 ...................24

*Amchem Products v. Windsor,*
  521 U.S. 591, 117 S.Ct. 2231 (1997) ........................................................34,35

*Baker, et al. v. L.A. Fitness International, LLC*
  (May, 28, 2010) Los Angeles Superior Court, Case No. BC464785.....................25

*Banda v. Verizon California, Inc.*
  (Apr. 1, 2010) Los Angeles Superior Court, Case No. BC434587.......................25

*Barbosa v. Cargill Meat Solutions Corp.,*
  297 F.R.D. 431, 450-51 (E.D. Cal. July 2, 2013) ..........................................16

*Barnwell v. Pacific Ocean Transportation, Inc.*
  (May 31, 2016) Los Angeles Superior Court, Case No. BC555412 ....................24

*Baumann v. Chased Investments Services Corp., et al.*
  (July 8, 2011) Los Angeles Superior Court, Case No. BC465806 ......................25

*Bernal v. DaVita, Inc.,*
  No. 5:12-cv-03255-PSG (N.D. Cal. Jan. 14, 2014) ..........................................17

*Boyd v. Bank of Am. Corp.,*
  No. SACV 13-0561-DOC, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) ........16

*Campbell v. Best Buy Stores, L.P.,*
  No. 2:12-cv-07794-JAK-JEM, 2016 WL 6662719, at *10 (C.D. Cal. Apr. 5, 2016) ...........16

*Amaral v. Cintas Corp. No.2,*
  (2008) 163 Cal.App.4th 1157 ......................................................................29

*Churchill Vill., L.L.C. v. GE,*
  361 F.3d 566 (9th Cir. 2004) .......................................................................36

*Collins v. Cargill Meat Solutions Corp.,*
  274 F.R.D. 294 (E.D. Cal. 2011) .................................................................22

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1600
CONCORD, CA 94520
TEL: (925) 225-9300

-v-

*Davis v. Brown Group Retail, Inc., et al.,*
  (Aug. 2, 2013; E.D. Cal. Case No. 1:13-cv-01211-LJO-BAM ................................26

*Day v. NLO,*
  851 F.Supp. 869 (S.D. Ohio 1994) ...............................................................32

*Does I thru XXIII v. Advanced Textile Corp.,*
  214 F.3d 1058, 1064 (9th Cir. 2000) .............................................................20

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) ........................................................................36,37

*Elliott v. Rolling Frito-Lay Sales, LP,*
  No. 11-01730 DOC, 2014 WL 2761316, at *9 (C.D. Cal. June 12, 2014) ...........................17

*Epic Systems Corp. v. Lewis,*
  138 S. Ct. 1612 (2018) ..................................................................10,24

*Estrada v. FedEx Ground Package System, Inc.,*
  154 Cal.App.4th 1 (2007) .....................................................................34

*Franco, et al v. Ruiz Food Products, Inc.*
  (Dec. 15, 2010) E.D. Cal Case No. 1:10-cv-02354-SKO ...........................................25

*Garcia v. Gordon Trucking, Inc., et al.*
  (Feb. 23, 2010; E.D. Cal. Case No. 1:10-cv-00324-AWI-SKO) .....................................25

*Gay v. Waiters' & Dairy Lunchmen's Union,*
  489 F. Supp. 282 (N.D. Cal. 1980) ............................................................30

*Ghazaryan v. Diva Limousine, Ltd.,*
  169 Cal. App. 4th 1524 (2008) ................................................................34

*Gutierrez v. Kovacevich "5" Farms,*
  2004 WL 3745224, at *5 (E.D. Cal. Dec. 2, 2004) ..............................................32

*Haley v. Medtronic, Inc.,*
  169 F.R.D. 643 (C.D. Cal. 1996) ..............................................................31

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) .....................................................22,30-33,35

*Harris v. Vector Mktg. Corp.,*
  No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .................................28

*Hightower v. JPMorgan Chase Bank, N.A.,*
  Case No. 2:11-cv-01802-PSG-PLA (C.D. Cal. Oct. 5, 2015) ......................................17

*Hill v. R & L Carriers, Inc.,*
  690 F.Supp.2d 1001 (N.D. Cal. 2010) .........................................................20

*In re Celera Corp. Sec. Litig.,*
  No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *3 (N.D. Cal. Mar. 31, 2015) .....................30

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 925-2300

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

*In re Heritage Bond Litig.,*
    546 F.3d 667 (9th Cir. 2009) ...................................................................22

*In re Mego Fin. Corp. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ...................................................................30

*In Re Prudential Ins. Co. of Am. Sales Practice Litig.,*
    962 F.Supp. 450 (D. N.J. 1997) ...............................................................35

*In re Tableware Antitrust Litig.,*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) .....................................................29

*In re Wells Fargo Loan Processor Overtime Pay Litig.,*
    2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ..............................................37

*Jones v Agilysys, Inc.,*
    Case No: C 12--03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 9, 2014) ...............20,21

*Jones v. Bath & Body Works, Inc.,*
    No. 2:13-cv-05206-FMO-AJW (C.D. Cal. July 11, 2016) ...........................16

*Jordan v. County of Los Angeles,*
    669 F.2d 1311 (9th Cir. 1982) .................................................................30

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas,*
    244 F.3d 1152 (9th Cir. 2001) .................................................................35

*Lopez Cruz, et al. v. El Rancho Farms, et al.,*
    (Nov. 28, 2012) (E.D. Cal. Case No. 1:12-cv-01934-AWI-JLT) ...................26

*Mauricio v. Preferred Freezer Services*
    (July 18, 2014) Los Angeles Superior Court, Case No. BC552083 .....................24

*Mendoza v. United States,*
    623 F.2d 1338 (9th Cir. 1980) .................................................................36

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950)..............................................................................37

*Murphy v. CVS Caremark Corporation, et al.*
    (July 5, 2011) Los Angeles Superior Court, Case No. BC464785 ......................25

*Nordstrom Commission Cases* (2010)
    186 Cal.App.4th 576 ............................................................................24

*Nunnally v. Dave & Busters,*
    No. 8:16-cv-00855-DOC-KES (C.D. Cal. Jan. 9, 2017) .............................17

*Officers for Justice v. Civil Serv. Comm'n of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) ..................................................................22

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 3355200

-vii-

*Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*
    (Apr. 5, 2013, E.D. Cal. Case No. 2:13-cv-00672-KJM-KJN ...................................................26

*Pickett v. 99 Cents Only Stores*
    (Nov. 4, 2011) Los Angeles Superior Court, Case No. BC473038 ........................................25

*Prince v. CLS Transportation, Inc.,*
    118 Cal.App.4th 1320 (2004) ............................................................................................34

*Pokorny v. Quixtar, Inc.,*
    No. C 07-0201 SC, 2013 U.S. Dist. LEXIS 100791 *4 (N.D. Cal. July 18, 2013) ...............16

*Quintana v. Claire's Boutiques, Inc.,*
    No. 5:13-cv-00368-PSG (N.D. Cal. Dec. 1, 2015) ...............................................................16

*Rainbow Bus. Solutions v. Merch. Servs,*
    2013 U.S. Dist. LEXIS 179288, *15 (N.D. Cal. 2013) ........................................................32

*Rodriguez v. Kraft Foods Group, Inc.*
    (July 18, 2014, E.D. Cal. Case No. 1:14-cv-01137-LJO-EPG) ............................................26

*Rodriguez v. West Publ'g Corp.,*
    563 F. 3d 948 (9th Cir. 2009) ....................................................................................28,30,37

*Singer v. Becton Dickinson & Co.,*
    No. 08-CV-821-IEG (BLM), 2010 U.S. Dist. LEXIS 53416 (S.D. Cal. Jun. 1, 2010) ..........17

*Slaven v. BP Am., Inc.,*
    190 F.R.D. 649 (C.D. Cal. 2000) .......................................................................................31

*Solis v. Rudy's Hollywood, LLC,*
    (Feb. 18, 2017) Los Angeles Superior Court, Case No. BC610643 .....................................24

*Stanfield v. First NLC Fin. Servs., LLC,*
    Case No. C 06-2892 SBA, 2006 WL 3190527, at *3 (N.D. Cal. Nov. 1, 2006) ...................21

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) .............................................................................................28

*Stewart v. San Luis Ambulance,*
    Cal. Supreme Court Case No. S246255.................................................................................30

*Stuart v. Radioshack Corp.,*
    No. C-07-4499 EMC, 2010 U.S. Dist. LEXIS 92067, *18 (N.D. Cal. 2010) ........................17

*Tierno v. Rite Aid Corp.,*
    2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006) ....................................................32

*Vasquez v. Coast Valley Roofing, Inc.,*
    670 F. Supp.2d 1114 (E.D. Cal. 2009).............................................................................16,29

*Westways World Travel, Inc. v. AMC Corp.,*
    218 F.R.D. 223 (C.D. Cal. 2003) ........................................................................................35

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 355-5200

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

*Wehner v. Syntex Corp.,*
   (N.D. Cal. 1987) 117 F.R.D. 641 ..................................................................32

*Willner v. Manpower Inc.,*
   (N.D. Cal. 2014) 35 F.Supp.3d 1116 ..........................................................29

**Rules**

Federal Rule of Civil Procedure 23 .......................................................... 22,30-37

Federal Rule of Civil Procedure, Rule 30(b)(6).............................................30

**Statutes**

Cal. Bus and Prof Code § 17200, et seq. .........................................................32

Cal. Labor Code § 203 ...........................................................................29,30,32

Cal. Labor Code § 226 ...........................................................................29,30,32

Cal. Labor Code § 1174 ....................................................................................31

Cal. Labor Code § 2698, et seq. (Private Attorney General Act of 2004) ...................................32

29 U.S.C. § 216(b) ...........................................................................................20

**Secondary Sources**

Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study: 1993-2008* (2010) 7 J. of Empirical Leg. Stud. 248 ..........................................16

Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Award* (2010) 7 J. Empirical Leg. Stud. 811 ........................................................15

*McLaughlin on Class Actions: Law and Practice* § 6.6 (7th ed. 2011) .......................................22

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 555-5100

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

## NOTICE OF MOTION

**TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on _____, 2019 at _____, in Courtroom 12 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Perry Wadler, Gerry Springer, Troy Willis, Ray Paiva, Keith Tyner, and Armen Abgaryan ("Plaintiffs") will and hereby do move the Court for an order granting preliminary approval of the class action settlement with Defendant Custard Insurance Adjusters, Inc., ("Defendant," and all parties collectively as the "Parties").

This motion shall be based on Rule 23 of the Federal Rules of Civil Procedure and in conformity with the recent Northern District of California Procedural Guidance for Class Action Settlements.

This motion is made on the grounds that the proposed settlement is within the range of reasonableness and the Class Notice fairly and adequately informs the Class Members of the terms of the proposed Settlement, their potential awards, their rights and responsibilities, and the consequences of the Settlement.

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declarations of Scott Edward Cole, Michael Dawson, Greg K. Hafif and Larry A. Sackey, and the respective exhibits thereto, the documents and records on file in this matter, and such additional arguments, authorities, evidence and other matters as may be presented in supplemental briefing hereto and/or at the hearing.

## RELIEF SOUGHT

Plaintiffs respectfully request the Court issue an Order:

1.    Conditionally certifying the California and FLSA classes and the California Class Claims, and the FLSA Class Claims;

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 335-5300

2.      Conditionally appointing Plaintiffs and Class Counsel as representatives of the proposed California Settlement Class and the FLSA Settlement Class;

3.      Granting preliminary approval of the class action settlement set forth in the Agreement, a true and correct copy of which is attached to the Declaration of Scott Edward Cole, Esq.;

4.      Approving the Class Notice, and Claim Form (collectively, the "Class Notice Packet"), true and correct copies of which are attached to the Declaration of Scott Edward Cole, Esq.;

5.      Confirming that the Notice of Settlement to be served by Plaintiffs on the California Labor and Workforce Development Agency satisfies the requirements of PAGA;

6.      Appointing CPT Group as the Settlement Administrator; and

7.      Setting a hearing on final approval of the class action settlement ("Final Approval Hearing"), at which Class Members may be heard, and for Plaintiff's Class Counsel's application for an award of attorneys' fees and litigation costs and Plaintiffs' Service Awards.

Dated: January 16, 2019            **SCOTT COLE & ASSOCIATES, APC**

By:  _____
     Scott Edward Cole, Esq.
     Attorneys for Plaintiff Keith Tyner
     and the Putative Class

     *(additional counsel on caption page ii)*

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 255-2900

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

## MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

This is a wage and hour class/collective action brought by Plaintiffs Perry Wadler, Gerald Springer, Jr., Troy Willis, Ray Paiva, Keith Tyner, and Armen Abgaryan (collectively, "Plaintiffs") on behalf of themselves and all similarly-situated current and former insurance adjusters of Defendant Custard Insurance Adjusters, Inc., ("Defendant," and all parties collectively as the "Parties"). The settling Plaintiffs are represented by Scott Cole & Associates, APC ("SCA"), the Law Offices of Herbert Hafif, the Law Offices of Larry A. Sackey, and the Matern Law Group, PC.

Plaintiffs allege violations of the Fair Labor Standards Act ("FLSA") and California Labor Code and assert the following claims for relief: (1) Failure to Provide Required Meal Periods, (2) Failure to Provide Required Rest Periods, (3) Failure to Pay Overtime Wages, (4) Failure to Pay Minimum Wages, (5) Failure to Pay All Wages Due to Discharged and Quitting Employees, (6) Failure to Maintain Required Records, (7) Failure to Furnish Accurate Itemized Wage Statements, (8) Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties, (9) Unfair and Unlawful Business Practices, and (10) a claim for penalties under the Labor Code Private Attorneys General Act ("PAGA").

The proposed settlement includes two classes: (1) "California class" defined as all persons who were employed as overtime-exempt insurance adjusters by Defendant at a Custard branch office in California at any time on or after October 4, 2013 through the date of preliminary approval and (2) "FLSA class" defined as all persons employed as overtime-exempt insurance adjusters by Defendant at any Custard branch office location in the United States at any time on or after October 4, 2014 through the date of preliminary approval. The California class is comprised of about 55 employees whereas the FLSA class is comprised of about 722 employees.

The Settlement Agreement (hereinafter, the "Agreement") provides for a non-reversionary settlement in the amount of $2,430,000.00.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1600
CONCORD, CA 94520
TEL: (925) 385-5300

1    As more fully discussed below, the proposed settlement is the product of arms-length
2    negotiations, which took place at a mediation (and numerous discussions thereafter over a period
3    of several months) facilitated by experienced mediator, Mr. David A. Rotman. The Settlement was
4    reached after substantial investigation and analysis of class data and represents a substantial
5    recovery for the Class Members. While the parties have agreed to utilize a Claim Form, the form
6    is for informational purposes and/or to be used in the event a Class Member wishes to challenge
7    his workweek information; it does not represent a barrier to participation in the Settlement
8    recovery. The FLSA class includes an opt-in requirement—that opt-in decision being
9    communicated vis-a-vis cashing of the settlement checks themselves. The release as to both classes
10   is limited to those claims included in the Complaints as well as other wage and hour class claims
11   which could have been brought based on the specific factual allegations set forth in the Complaints.
12   In sum, the proposed settlement is well within the range of reasonableness and represents a
13   significant recovery based on the claims alleged and the defenses asserted thereto.

14       Finally, the proposed notice plan meets all requirements as to method and form, insofar as
15   the Class Notice, which is to be distributed by mail to the last known address of each Class
16   Member, fairly apprises the Class Members of the terms of the proposed Settlement and their right
17   to object and be heard.

18   **II.    STATEMENT OF FACTS**

19       **A.    The Parties**

20       Defendant Custard Insurance Adjusters, Inc. is one of the largest independent loss
21   adjustment companies in the United States. It operates in 48 of 50 states, maintains more than 250
22   branch locations, employs hundreds of adjusters, and services clients through a 24/7 contact center.

23       During the class period (at least until January 1, 2018), all adjusters that Defendant
24   employed were classified as "Commission Adjusters." After that time, Custard began re-
25   classifying adjusters and compensating them as hourly employees, thereby reducing the potential
26   damages for Class Members who worked after January 1, 2018.

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 595-2000

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

1    One of the chief contentions in this litigation was that Plaintiffs and Class Members worked

2    long hours and were required to travel long distances from their respective home offices to claim

3    sites. However, travel distances were calculated from branch locations, not home offices, and were

4    subject to standardized fees and billing charges, thereby minimizing the cost to the client, but

5    short-changing adjusters for the time and expense of working each claim.

6    Additionally, Plaintiffs and Class Members contend they were not compensated for "on-

7    call" time, which entailed being called for and taking claims at virtually all hours of the day and

8    night, as dictated by policies set forth in the Employee Handbook and as reinforced by Defendant's

9    managers.

10

11    **Plaintiff Wadler**

12    Plaintiff Wadler was hired on July 26, 2007 as a commission-only insurance adjuster.

13    Throughout his employment, he was based in the Hayward office, but worked out of his home in

14    Dublin. Wadler performed myriad duties including responding to calls, traveling to and from claim

15    sites, taking photographs, interviewing witnesses, assessing liability and damages, attending

16    mandatory settlement conferences, making recommendations as to settlement amounts, and

17    preparing reports per company policy.

18    Mr. Wadler was frequently required to work claims in distant locations, such as Fort Bragg,

19    King City, and Redding, and incurred substantial drive time and mileage for which he was never

20    compensated and/or reimbursed. Furthermore, he was on-call almost every day and organized his

21    schedule around the requirement that he be available at all hours.

22    As required by Defendant, Mr. Wadler prepared and submitted reports detailing services

23    rendered, which the company then used to bill customers. His compensation was based on a

24    percentage of billable services performed and did not reflect the hours actually worked.

25    Accordingly, Wadler was denied regular and overtimes wages, meal and rest periods,

26    reimbursements, wages upon termination, and other rights under California and federal law.

27    Mr. Wadler resigned his employment on or about March 30, 2018.

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 225-9900

-3-
Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

**Plaintiff Springer**

Plaintiff Springer was hired on June 8, 2015 as a commission-only insurance adjuster. Throughout his employment, he was based in the Citrus Heights office, but covered a large geographic area. Springer performed myriad duties including responding to calls, traveling to and from claim sites, taking photographs, interviewing witnesses, assessing liability and damages, attending mandatory settlement conferences, making recommendations as to settlement amounts, and preparing reports per company policy.

Mr. Springer was frequently required to work claims in distant locations, such as Redding, Placerville, Turlock, and Vallejo, and incurred substantial drive time and mileage for which he was never compensated and/or reimbursed. Furthermore, he was occasionally required to be on-call--but generally avoided it.

As required by Defendant, Mr. Springer prepared and submitted reports detailing services rendered, which the company then used to bill customers. His compensation was based on a percentage of billable services performed and did not reflect the hours actually worked. Accordingly, he was denied regular and overtimes wages, meal and rest periods, reimbursements, and other rights under California and federal law.

Mr. Springer is still employed by Defendant.

**Plaintiff Willis**

Plaintiff Willis was hired on June 12, 2017 as a commission-only insurance adjuster. Throughout his employment, he was based in the Oakland office, but worked out of his home in Newman, roughly 100 miles away. Mr. Willis performed myriad duties including responding to calls, traveling to and from claim sites, taking photographs, interviewing witnesses, assessing liability and damages, attending mandatory settlement conferences, making recommendations as to settlement amounts, and preparing reports per company policy.

Plaintiff Willis was frequently required to work claims in distant locations all over Central and Northern California and incurred substantial drive time and mileage for which he was never

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1600
CONCORD, CA 94520
TEL: (925) 364-3200

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

1  compensated and/or reimbursed. Furthermore, he was on-call at least a few days each month,

2  during which he was required to be available at all hours.

3    As required by Defendant, Mr. Willis prepared and submitted reports detailing services

4  rendered, which the company then used to bill customers. His compensation was based on a

5  percentage of billable services performed and did not reflect the hours actually worked.

6  Accordingly, Mr. Willis was denied regular and overtimes wages, meal and rest periods,

7  reimbursements, wages upon termination, and other rights under California and federal law.

8    He resigned his position on August 21, 2018.

9

10  **Plaintiff Paiva**

11    Plaintiff Ray Paiva was hired as a commission-only adjuster on June 2, 2014. Throughout

12  his employment, his was based in the Oakland and Hayward offices, but worked out of his home

13  in Lodi. Mr. Paiva performed myriad duties including responding to calls, traveling to and from

14  claim sites, taking photographs, interviewing witnesses, assessing liability and damages, attending

15  mandatory settlement conferences, making recommendations as to settlement amounts, and

16  preparing reports per company policy.

17    Mr. Paiva was frequently required to work claims in distant locations across Central and

18  Northern California and incurred substantial drive time and mileage for which he was never

19  compensated and/or reimbursed. Furthermore, Mr. Paiva was occasionally required to be on-call,

20  during which he had to be available at all hours.

21    As required by Defendant, Mr. Paiva prepared and submitted reports detailing services

22  rendered, which the company then used to bill customers. His compensation was based on a

23  percentage of billable services performed and did not reflect the hours actually worked.

24  Accordingly, Mr. Paiva was denied regular and overtimes wages, meal and rest periods,

25  reimbursements, and other rights under California and federal law.

26    Mr. Paiva is still employed by Defendant.

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL (942) 355-9200

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

**Plaintiff Abgaryan**

Mr. Abgaryan was hired by Custard Insurance Adjusters Inc. on May 17, 2010, and continuously worked as a "commissioned" adjuster until his resignation on December 15, 2016.

Throughout his employment at Custard, Mr. Abgaryan was assigned to work at Custard's branch office in West Covina, California and he continued working there for over six and one-half (6½) years until his resignation.

At the time he was hired, Mr. Abgaryan was provided and signed a "New Hire Employment Form," and a form memo to newly hired commission adjusters - with compensation details explaining the terms of his compensation as a "Commission Adjuster." (See, Declaration of Larry A. Sackey ("Sackey Decl."), at ¶¶ 15 & 16, See also, Exhibits 3 and 4 thereto).

Generally, these documents purport to pay to Custard's adjusters commissions linked to the amounts Custard collected from its customers, without any provisions for salaries, bonuses, or other wage benefits, such as overtime. By the terms of Custard's "New Hire Employment Form," the parties agreed that Mr. Abgaryan was to be paid 50% of his own "worked and billed services," not for additional adjusting services that Custard required of its adjusters that were not billed to Custard's customers.

Additionally, Custard reimbursed Mr. Abgaryan and his co-worker adjusters for photographs they took and for mileage expenses. They also required that Mr. Abgaryan's job duties include all the various aspects of an adjusting a claim on behalf of Custard's customers, including, *inter alia*, responding to calls at all hours of the day and night, interviewing witnesses, assessing liability and damages, attending mandatory settlement conferences, and making recommendations as to settlement amounts.

While working for Custard, plaintiff Abgaryan never earned a predetermined amount of compensation that was subject to reduction because of variations in the quality or quantity of the work he performed. Rather, Mr. Abgaryan was compensated in the form of a percentage of the amount of money Custard received from its clients for his services, which was determined based upon some, but not all, of the hours plaintiff spent adjusting a particular claim. Mr. Abgaryan was

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 285-3200

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

1  not compensated for any hours he worked in excess of 40 hours per week, or for rest and lunch

2  breaks, travel time, or for "on-call" hours he worked each week. Along with his adjuster co-

3  workers, he was required to spend numerous hours each week due to extensive travel time and

4  "on-call" time. At least one adjuster from each branch was required to be on-call in order to

5  implement Custards policy to provide 24-hour server 7 days a week. (See, Sackey Decl. at ¶ 17;

6  Exhibit 5 thereto).

7      Each month, Mr. Abgaryan followed Custard's systematic procedure and tallied those

8  hours that he performed adjusting services for Custard's customers that he understood were limited

9  to only adjuster services that could be billed to Custard's customers. Thus, the time sheets that Mr.

10  Abgaryan turned into Custard did not reflect all the hours he actually worked, which were far

11  greater than 40 hours per week.

12      On April 7, 2016. Mr. Abgaryan along with his fellow adjusters received a memo from

13  Custard (See, Sackey Decl. at ¶ 18; Exhibit 6 thereto) along with instructions to read, sign and

14  return an Updated Employment Agreement along with an Appendix A, an Arbitration Agreement.

15  (See, Sackey Decl., at ¶ 19; Exhibit 7 thereto). As he was told, Mr. Abgaryan dutifully signed the

16  documents that were presented to him as a condition of his future employment.

17  **Plaintiff Tyner**

18      Mr. Tyner was hired by Custard Insurance Adjusters Inc. on October 16, 2016 and

19  continuously worked as an Adjuster until his termination on May 15, 2017.

20      Throughout his employment at Custard, Mr. Tyner was assigned to work at Custard's

21  branch office in San Jose/Hayward, California. He continued working there for over six months

22  until his termination. Although Mr. Tyner was assigned to the San Jose/Hayward area, he

23  primarily worked from home.

24      At the time he was hired, Mr. Tyner received a "New Hire Employment Form," and an

25  Employment Agreement form memo given to newly hired staff containing details explaining the

26  terms of his compensation as an Adjuster. He signed the document with the understanding

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 255-5200

-7-

1  signing the documents was a condition of employment. Additionally, Mr. Tyner was required to

2  sign an Arbitration Agreement.

3      The addendum outlined a compensation structure where Adjusters received a percentage

4  of the amount collected from Custard's clientele. The percentage varied, but generally, Tyner

5  was to be paid 50% of his own "worked and billed services."

6      Additionally, Mr. Tyner alleges that Custard required that at least one Adjuster from each

7  branch be on call in order to implement Custard's 24-hour service/7 days a week customer

8  service policy. If this allegation was proven, Mr. Tyner would naturally have worked in excess of

9  40 hours a week and/or eight hours a day but never compensated for most of these hours--nor

10  been informed of his entitlement to numerous rest and meal periods. To Mr. Tyner's knowledge,

11  all Adjusters shared these experiences and were compensated under an identical or substantially

12  similar scheme. These damages are likely substantial, particularly given Custard's policy

13  demanding at least one Adjuster from each branch be "on call" at all times--yet another

14  responsibility Mr. Tyner shared with his co-Adjusters.

15      **B.**    **Nature of the Case**

16      All Plaintiffs allege they were misclassified as exempt employees and that Defendant

17  promulgated class-wide policies that violated the FLSA and California wage and hour law.

18  Plaintiffs further allege that Defendant maintained a policy of requiring employees to be on call

19  during their meal and rest periods and after hours, but failed to compensate them for all hours

20  worked, including substantial overtime wages.

21      On January 1, 2018, Defendant converted all California insurance adjusters to hourly

22  compensation and issued new guidelines for wage and hour compliance, including meal and rest

23  periods, and started paying employees overtime.

24      **C.**    **Procedural History**

25      The settlement resolves five separate actions pending against Defendant.

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 595-5200

*Wadler I – The First Filed Action*

On October 11, 2017, Plaintiffs Springer, Wadler, Tyner, and Willis filed a putative class action Complaint in the Federal Court for the Northern District of California, Case Number 3:17-cv-05840-WHO ("Wadler Action") alleging the following claims for relief: Failure to Pay Overtime Under the Fair Labor Standards Act FLSA, Failure to Pay Minimum Wage Under the Fair Labor Standards Act FLSA, Failure to Pay Overtime under California Labor Code §§ 510 and 1198, Failure to Pay Minimum Wage under California Labor Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wage), Violation of California Labor Code §§ 226. 7 and 512(a) (Unpaid Meal Period Premiums), Violation of California Labor Code § 226.7 (Unpaid Rest Period Premiums), Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements), Violation of California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid), Violation of California Labor Code §§ 2800 and 2802 (Unreimbursed Business Expenses), Conversion, and Violation of California Business & Professions Code §§ 17200, et seq.

This action was filed by Scott Cole & Associates ("SCA"). Plaintiffs filed a motion for collective action certification. Defendant filed a motion to stay proceedings pending *Epic Systems* and a motion to compel arbitration. The motions were heard on December 6, 2017 and a stay was granted as to Plaintiffs Springer, Willis, and Tyner. However, after reconsideration, Plaintiff Wadler was compelled to arbitration.

In March 2018, attorney Corey B. Bennett left SCA to join the Matern Law Group ("MLG"). Plaintiff Wadler substituted Mr. Bennett and MLG as his counsel of record on April 16, 2018.

*The Abgaryan Action-The first case in which a tolling agreement was ordered*

On October 23, 2017, Plaintiff Abgaryan filed a putative class action complaint against Defendant in California's Central District Federal Court, Case Number 8:17-CV-01849-DOC-JDE ("Abgaryan Action"), alleging the following claims for relief: Violations of Fair Labor Standards Act [29 U.S.C., §§ 201, et seq.], Unpaid Wages Due and Damages [Lab. Code §§ 204, 218.5, 223], Failure to Pay Wages Due Upon Termination, Waiting Time Penalties [Lab. Code §§ 201, 203],

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL. (942) 355-6200

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

1   Failure to Provide an Accurate Itemized Wage Statement [Lab. Code § 226], Breach of Written

2   Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Violation of Bus. & Prof.

3   Code § 17200, et seq., and Unlawful Deductions from Wages - Wage Forfeiture (Lab. Code §§

4   221, 2802).

5       On October 22, 2018, the *Abgaryan Action* was deemed related to the *Springer* Action and

6   the Court assigned case the amended Case Number 17-cv-05840-WHO. On November 30, 2018,

7   Plaintiff Abgaryan filed a First Amended Complaint alleging the following claims for relief:

8   Violations of Fair Labor Standards Act [29 U.S.C., §§ 201, et seq.], Failure to Pay Overtime Wages

9   [Lab. Code §§ 510 &1198], Failure to Pay Wages Due Upon Termination, Waiting Time Penalties

10  [Lab. Code §§ 201, 203, 204, 218.5, 223], Failure to Provide an Accurate Itemized Wage Statement

11  [Lab. Code § 226], Unlawful Deductions from Wages - Wage Forfeiture [Lab. Code §§ 221, 2802],

12  Violation of Bus. & Prof. Code § 17200, et seq., Breach of Written Contract, and Breach of Implied

13  Covenant of Good Faith and Fair Dealing.

14      On November 13, 2017 the Abgaryan action was stayed by mutual agreement of the parties

15  two weeks prior to a similar stay order obtained in Wadler action. This stay order included an order

16  equitable tolling the statute of limitations period for the putative plaintiffs herein. This was the

17  first case that obtained a tolling agreement for the putative class.

18      Plaintiff Abgaryan is represented by the Law Offices of Herbert Hafif, P.C., and Law

19  Offices of Larry A. Sackey. The *Abgaryan Action* was also stayed by mutual agreement of the

20  parties until the Supreme Court's decision in *Epic Systems v. Lewis* and thereafter pending

21  mediation. The case remains stayed pending approval of the Settlement.

22  ***The Wadler Arbitration***

23      On April 19, 2018, Plaintiff Wadler initiated arbitration through the American Arbitration

24  Association, Case Number 01-18-0001-5803 (Wadler Arbitration Action). After a lengthy

25  selection process, Arbitrator Martin H. Dodd was selected. Plaintiff Wadler is the only plaintiff in

26  any pending action who does not have a class or collective action waiver and, accordingly,

27  intended to proceed on a class-wide basis.

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 335-5900

-10-

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (982) 285-2500

***Wadler II – The First-Filed PAGA Action***

On April 12, 2018, Plaintiff Wadler filed suit in the Superior Court of the State of California for the County of San Francisco, Case Number CGC-18-565724 ("Wadler PAGA Action"), asserting a single claim for "Violation of the California Labor Code Private Attorneys General Act of 2004." This first-filed PAGA-only action was removed to the Federal Court for the Northern District of California on May 10, 2018 (Case No. 3:18-cv-02768-EDL) and related to the *Springer* action.

***The Springer Action***

Following Plaintiff Wadler's departure to arbitration, *Wadler I* became the *Springer* action and, for a brief period, included Plaintiffs Springer, Willis, and Tyner. The action remained stayed until after the *Epic Systems* ruling and continued thereafter pending mediation.

***The Paiva Action***

On August 2, 2018, Ray Paiva filed suit against Defendant in the Federal Court for the Northern District of California, Case No. 18-cv-04670-EDL ("Paiva Action"), alleging the following claims for relief: Failure to Pay Overtime Under the Fair Labor Standards Act FLSA, Failure to Pay Minimum Wage Under the Fair Labor Standards Act FLSA, Failure to Pay Overtime under California Labor Code §§ 510 and 1198, Failure to Pay Minimum Wage under California Labor Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wage), Violation of California Labor Code §§ 226. 7 and 512(a) (Unpaid Meal Period Premiums), Violation of California Labor Code § 226.7 (Unpaid Rest Period Premiums), Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements), Violation of California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid), Violation of California Labor Code §§ 406 and 2802 (Failure to Indemnify Employees for Necessary Expenditures Incurred), Violation of California Labor Code §§ 2800 and 2802 (Unreimbursed Business Expenses), and Violation of California Business & Professions Code §§ 17200, et seq.

**D.    Discovery and Investigation**

Prior to filing their Complaints, Plaintiffs' counsel conducted an extensive investigation, including interviewing Plaintiffs and witnesses, reviewing documents provided by Plaintiffs which included the Employee Handbook, time-logs, and other publicly-available documents, and conducting legal research regarding the applicable California Labor Code Sections and Industrial Welfare Commission Wage Order. After filing, Plaintiffs' counsel continued investigation, including regular interviews with Plaintiffs and witnesses regarding changes in company policies and practices, and legal research concerning arbitration and class/collective action waivers.

Prior to mediation, the Parties also engaged in informal discovery. Defendants produced two spreadsheets representing hours worked by insurance adjusters in California and nationwide, and information about employees with arbitration agreements.

Defendant represented that, as of August 2018, there were 55 California class members (23 current employees and 32 former employees) and 722 FLSA class members (excluding California employees).

Based on the experiences of named Plaintiffs, the data provided by Defendant concerning hours worked and pay, Plaintiffs designed a damages model which assisted in the estimated of the total maximum damages owed to the classes.

As a result of this discovery and investigation, Plaintiffs were well-apprised of the salient legal and factual issues prior to the settlement conference and entering into the Agreement.

**E.    Settlement Negotiations**

The Parties participated in a mediation with David A. Rotman on August 15, 2018. That day, the Parties reached a settlement as to the amount. Following the mediation, the parties continued to discuss the terms of the Agreement. The Agreement was fully executed on January 15, 2019.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 355-5200

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

1  **III.   THE SETTLEMENT**

2       **A.   The Classes**

3       The proposed settlement encompasses two classes, a "California class" and an "FLSA"

4  Class:

5       The California Class: The class includes all persons who were employed as overtime-
        exempt insurance adjusters by Defendant in one or more of its Custard branch office
6       locations in California at any time on or after October 4, 2013.

7       FLSA Class: The class includes all persons who were employed as overtime-exempt
        insurance adjusters by Defendant in one or more of its Custard branch office locations
8       inside and outside of California at any time on or after October 4, 2014.

9       **B.   Settlement Terms**

10      Under the proposed non-reversionary Settlement, the claims of all Class Members shall be

11  settled for the Maximum Settlement Amount of Two Million Four-hundred and Thirty Thousand

12  Dollars and Zero Cents ($2,430,000.00) which is inclusive of all Individual Settlement Awards to

13  Class Members, the Class Counsel Award, PAGA payment, the Class Representative Service

14  Awards, and the Employer's Share of Payroll Taxes. Agreement ¶ 19. The Maximum Settlement

15  Amount shall be allocated as follows:

16      Individual Settlement Awards. The Net Settlement Amount, which equals the Maximum

17  Settlement Amount less the Class Counsel Award, the Class Representative Service Award, and

18  the Employer's Share of Payroll Taxes, shall be distributed to Class Members. Agreement ¶ 36.

19  The Net Settlement Amount shall be allocated as follows: 80% to the California Class and 20% to

20  the FLSA Class. Agreement ¶ 88(a) and (b). The allocation between California Class Members

21  and FLSA Class Members was calculated based on the maximum potential damages attributable

22  to each group of employees. Each Class Member shall receive his/her respective share of the Net

23  Settlement Amount based on his/her Compensable Workweeks as described further below. *Id.*

24

25  **The California Class:**

26  •   California Class Members are not required to submit a claim in order to receive a share of
        the Net Settlement Amount, and no portion of the Maximum Settlement Amount shall
27      revert to Defendant or result in an unpaid residue. Agreement ¶ 47.

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1600
CONCORD, CA 94520
TEL: (925) 385-5300

- For each California Settlement Class Member, the Settlement Administrator shall determine the number of Compensable Workweeks worked during (a) the period between October 4, 2013 and December 31, 2017 (The "Pre-January 2018 Period"), and (b) the period between January 1, 2018 and the date the Court preliminarily approves this Settlement Agreement (the "Post-January 2018 Period").

- For each California Settlement Class Member, the Settlement Administrator shall next multiply his/her Compensable Workweeks worked within the Post-January 2018 Period by a factor of 0.75. For each California Settlement Class Member, this result shall be considered his/her total "2018 Weighted WorkWeeks." This difference in allocation for weeks before and after January 2018 is because Defendant converted all California insurance adjusters to hourly compensation as of January 1, 2018 and issued new guidelines wage-and-hour compliance, including meal and rest periods, and started paying overtime. As such, and because employees experienced far more Labor Code violations before January 1, 2018, those work weeks should be weighted more heavily than work weeks in which fewer Labor Code violations occurred.

- For each California Settlement Class Member, the Settlement Administrator shall next add his/her the Compensable Workweeks worked within the Pre-January 2018 Period to his/her 2018 Weighted WorkWeeks (as defined in the preceding subsection), to produce his/her "Individual Workweeks."

- The Settlement Administrator shall next add the Individual Workweeks of all California Settlement Class Members to produce the "Aggregated California Workweeks." The California Class Award (as defined above) shall be divided by the Aggregated California Workweeks to produce the settlement value of each California Settlement Class Member's Individual Workweek. This settlement value shall then be multiplied by each California Settlement Class Member's number of Individual Workweeks to yield each California Individual Settlement Share.

## The FLSA Class

- Each member of the FLSA Class shall be entitled to receive a pro rata portion of the FLSA Class Award (his/her "FLSA Class Individual Settlement Share"), pursuant to the workweek differential set forth below. FLSA Class Awards shall be calculated by applying the following procedure:

  o For each FLSA Settlement Class Member, the Settlement Administrator shall determine the number of Compensable Workweeks worked during (a) the period between October 4, 2014 and December 31, 2017 (The "Pre-January 2018 Period"), and (b) the period between January 1, 2018 and the date the Court preliminarily approves this Settlement Agreement (the "Post-January 2018 Period").

  o For each FLSA Settlement Class Member, the Settlement Administrator shall next multiply his/her Compensable Workweeks worked within the Post-January 2018 Period by a factor of 0.75. For each FLSA Settlement Class Member, this result shall be considered his/her total "2018 Weighted WorkWeeks."

  o For each FLSA Settlement Class Member, the Settlement Administrator shall next add his/her the Compensable Workweeks worked within the Pre-January 2018 Period to his/her 2018 Weighted WorkWeeks (as defined in the preceding subsection), to produce his/her "Individual Workweeks."

  o The Settlement Administrator shall next add the Individual Workweeks of all FLSA

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 325-5800

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 5600
CONCORD, CA 94520
TEL: (925) 555-5200

Settlement Class Members to produce the "Aggregated FLSA Workweeks." The FLSA Class Award (as defined above) shall be divided by the Aggregated FLSA Workweeks to produce the settlement value of each FLSA Settlement Class Member's Individual Workweek. This settlement value shall then be multiplied by each FLSA Settlement Class Member's number of Individual Workweeks to yield each FLSA Individual Settlement Share.[1]

<u>Class Representative Enhancement Award</u>. Subject to Court approval, Plaintiffs Keith Tyner, Armen Abgaryan, Perry Wadler, Gerald Springer, and Troy Willis shall be paid a Class Representative Service Award not to exceed $7,500.00 and Plaintiff Roy Paiva shall be paid a Class Representative Service Award not to exceed $2,500.00 for their time and effort in bringing and presenting the Action and for releasing their Released Claims. Agreement ¶ 47(b). Plaintiffs Wadler, Springer, Willis, Abgaryan and Tyner initiated their actions and devoted considerable time thereto. As more fully described in the attached declarations, this included frequent emails and telephone calls with counsel, production of documents, submission of declarations in support of Plaintiffs' motions for collective action certification and reconsideration, and communications surrounding mediation and settlement. For those currently employed at the time of filing (i.e., Plaintiffs Wadler, Springer, Willis, and Paiva), they risked retaliation and disruption of their daily work lives because they challenged the status quo and the alleged unlawful labor practices. See, Sackey Decl. ¶ 47(b).

<u>Class Counsel Award</u>. Subject to Court approval, Class Counsel shall be entitled to receive reasonable attorneys' fees in an amount to be determined by the Court, and an award of reasonable costs associated with Class Counsel's prosecution of the Action. Agreement ¶ 87(b). Class Counsel intend to seek attorneys' fees representing one-third of the Maximum Settlement Amount ($810,000.00) and will submit itemized billing statements and a detailed summary of its litigation costs and expenses in connection with its Motion for Attorneys' Fees. Class Counsel has devoted numerous hours to these actions, as more fully described in the attached declarations. A fee award representing one-third of the fund falls within the range of other comprehensive surveys of class action settlements and fee awards. *See Fitzpatrick, An Empirical Study of Class Action Settlements*

---

[1] If an Individual Settlement Payment check remains uncashed after One Hundred Eighty (180) calendar days from issuance, the Settlement Administrator shall pay over the amount represented by the check, without the need to include interest, to Legal Aid At Work. Agreement ¶ 48(b)(i).

1  *and Their Fee Award* (2010) 7 J. Empirical Leg. Stud. 811, 833 (analyzing 444 cases between

2  2006-2007 and concluding that "[m]ost fee awards were between 25 percent and 35 percent, with

3  almost no awards more than 35 percent."); Eisenberg & Miller, *Attorney Fees in Class Action*

4  *Settlements: An Empirical Study: 1993-2008* (2010) 7 J. of Empirical Leg. Stud. 248, 262, fn.16

5  (finding a similar range of fee awards). See also *Pokorny v. Quixtar, Inc.*, No. C 07-0201 SC, 2013

6  U.S. Dist. LEXIS 100791 *4 (N.D. Cal. July 18, 2013) (the "Ninth Circuit uses a 25% baseline in

7  common fund class actions, and in most common fund cases, the award exceeds that benchmark,

8  with a 30% award the norm absent extraordinary circumstances that suggest reasons to lower or

9  increase the percentage"). District courts within this circuit routinely award attorneys' fees in

10  excess of the 25% baseline, particularly for wage and hour class action settlements. *See, e.g.*,

11  *Akaosugi v. Benihana Nat. Corp.*, No. C 11–01272 WHA, 2013 WL 269083, at *4 (N.D. Cal. Jan.

12  24, 2013) (awarding $200,000 in attorneys' fees and costs on a common settlement fund of

13  $460,000); *Campbell v. Best Buy Stores, L.P.*, No. 2:12-cv-07794-JAK-JEM, 2016 WL 6662719,

14  at *10 (C.D. Cal. Apr. 5, 2016) (awarding one-third of $674,500 in attorneys' fees in a California

15  Labor Code action and observing that "[v]iewed collectively, the information relevant to the

16  Lodestar analysis provides a substantial basis for the approval of the proposed attorney's fees [and

17  when] considered in connection with . . . [the] analyses as to the percentage of the fund approach,

18  final approval of the fee request is warranted"); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-

19  DOC, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (awarding one-third in fees in a wage

20  and hour class action); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450-51 (E.D.

21  Cal. July 2, 2013) (awarding one-third of the settlement fund in a wage and hour class action

22  because there were "sufficient reasons to exceed [the benchmark] considering the risk of the

23  litigation, the contingent nature of the work, the favorable reaction of the class, and the fee awards

24  in other wage-and-hour cases"); *Vasquez*, 266 F.R.D. at 491-92 (awarding one-third in wage and

25  hour class action); *Jones v. Bath & Body Works, Inc.*, No. 2:13-cv-05206-FMO-AJW (C.D. Cal.

26  July 11, 2016) (awarding one-third in wage and hour class action); *Quintana v. Claire's Boutiques,*

27  *Inc.*, No. 5:13-cv-00368-PSG (N.D. Cal. Dec. 1, 2015), Dkt. No. 88 (awarding attorneys' fees

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (945) 255-5200

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

representing 33% of the fund); *Hightower v. JPMorgan Chase Bank, N.A.*, Case No. 2:11-cv-01802-PSG-PLA (C.D. Cal. Oct. 5, 2015) (awarding attorneys' fees representing 30% of the fund); *Bernal v. DaVita, Inc.*, No. 5:12-cv-03255-PSG (N.D. Cal. Jan. 14, 2014) (same); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. Jun. 1, 2010) (noting that the amount of one-third of the common fund for a wage and hour class action settlement "falls within the typical range" of fee awards); *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 U.S. Dist. LEXIS 92067, *18 (N.D. Cal. Aug. 9, 2010) (awarding one-third of settlement fund in wage and hour class action and noting that "[t]his is well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *Elliott v. Rolling Frito-Lay Sales, LP*, No. 11-01730 DOC, 2014 WL 2761316, at *9 (C.D. Cal. June 12, 2014) (awarding 30% of $1.6 million fund in attorneys' fees in a California Labor Code action and observing that 30% of the fund is "not uncommon for courts in this jurisdiction"); *Nunnally v. Dave & Busters*, No. 8:16-cv-00855-DOC-KES (C.D. Cal. Jan. 9, 2017) (awarding attorneys' fees representing thirty percent of the fund).

<u>Employer's Share of Payroll Taxes</u>. The Employer's Share of Payroll Taxes, including, but not limited to FICA and FUTA, shall be paid from the Maximum Settlement Amount. Agreement ¶ 91.[2]

<u>Settlement Administration Costs</u>. After receiving quotes from multiple settlement administrators, the CPT Group was selected. Settlement Administration Costs shall be paid from the Gross Settlement Fund and are not to exceed $15,000.00. Agreement ¶¶ 36 and 43; See, Declaration of Scott Edward Cole ("Cole Decl."), at ¶ 11.

**C.    The Release**

Upon the Effective Date, Plaintiff and other Class Members shall release and discharge the Released Parties from "from any and all individual and class claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, that were actually alleged in the

---

[2] Individual Settlement Awards shall be allocated one-third as wages and two-thirds as non-wage penalties and interest. Agreement ¶ 89.

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 595-2000

1   Complaints, as well as wage and hour class claims which could have been brought based on the

2   specific factual allegations contained in the Complaints, including, but not limited to, any claims

3   for unpaid wages, unpaid overtime, unpaid minimum wages, deduction(s) from wages, record-

4   keeping violations, paycheck and/or wage statement violations, meal period and rest period

5   violations, "waiting time" penalties, and failure to reimburse business expenses, unfair business

6   practices, and all civil and/or statutory penalties related to the foregoing, which arose between

7   October 4, 2013 (for the California Class) or October 4, 2014 (for the FLSA Class), and the date

8   the Court preliminarily approves this Settlement Agreement, inclusive." Agreement ¶¶ 21, 32.

9   With respect to only those members of the Plaintiff Classes who deposit or cash his/her settlement

10  check, the released claims shall also include any and all claims under the Fair Labor Standards Act

11  (FLSA) or that could have been asserted under federal law based on the specific facts alleged in

12  the Complaints." Agreement ¶ 69.

13          Rather than broadly including any conceivable claim, this release language is specifically

14  tethered to the claims actually asserted or which could have been asserted based on the specific

15  factual allegations contained in the complaints. The "Released Parties" means "Defendant and

16  Defendant's present and former parent companies, subsidiaries and affiliates, including Custard

17  Insurance Adjusters, Inc., as well as their shareholders, officers, directors, attorneys, insurers,

18  successors and assigns." Agreement ¶¶ 29, 71, and 79.

19          **D.    Class Notice**

20          Pursuant to the terms of the Agreement, sufficient notice will be provided that will fully

21  apprise Class Members of the terms of the Settlement. Within 10 calendar days of entry of the

22  Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the Class

23  Information, including the Class Members' names, last known mailing and email address, home

24  telephone numbers, Social Security Number, and Compensable Workweeks, for purposes of

25  mailing the Notice Packets to Class Members. Agreement ¶ 64. Upon receipt of the Class

26  Information, the Settlement Administrator will use the United States Postal Service National

27  Change of Address List to verify the accuracy of all addresses before the initial mailing date to

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1600
CONCORD, CA 94520
TEL: (925) 355-5200

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

1    ensure that the Class Notice Package is sent to all Plaintiff Class Members at the addresses most

2    likely to result in immediate receipt of the claim documents. Agreement ¶ 66. Class Members will

3    be presumed to have received Class Notice Packages that are not returned within 30 days. Id. For

4    returned envelopes, the Settlement Administrator will perform a routine skip trace procedure to

5    obtain a current address and, if an updated address is located, then re-mail the envelope to such

6    address within five calendar days of the receipt of the returned envelope. Id. Class Members to

7    whom Class Notice Packages were re-sent after having been returned undeliverable to the

8    Settlement Administrator shall have 10 calendar days thereafter to make a claim, object, opt in or

9    opt out of the settlement. Id. Re-mailed Class Notice Packages shall be accompanied by a short

10   cover letter from the Settlement Administrator informing the recipient of this adjusted deadline.

11   Id.

12              **1.    Notice to Class Members**

13              The Parties agree to the form of the Class Notice of Settlement and Claim Form, subject to

14   the Court's approval. (See, Cole Decl., Exs. B, C). The Claim Form will provide Class Members

15   with an estimate of their Individual Settlement Award based on their Compensable Workweeks.

16   Class Members will have the opportunity, should they disagree with the records regarding the

17   number of Compensable Workweeks they worked during the Class Period, as stated on the Claim

18   Form, to provide documentation and/or an explanation to show contrary information.

19              The notice will also include (1) contact information for Class Counsel to answer questions,

20   (2) the address for a website, maintained by the claims administrator or class counsel, that has

21   links to the notice, motions for approval and for attorneys' fees and any other important documents

22   in the case, and (3) instructions on how to access the case docket via PACER or in person at any

23   of the court's locations. The notice will also state the date of the final approval hearing, that the

24   date may change without further notice, and that Class Members should check the settlement

25   website or the Court's PACER site to confirm that the date has not been changed.

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 285-3200

-19-

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

## 2. Objections

The Notice of Settlement informs Class Members of their right to object to the Settlement. Agreement ¶ 74-75. Class Members who wish to object must submit a written brief or statement of objection ("Notice of Objection") electronically to the Court and in writing to the Settlement Administrator by the Response Deadline. *Id.* The Notice of Objection must describe why the objector believes the Settlement is unfair and whether the objector intends to appear at the final approval hearing. Agreement ¶ 75. Class Members who fail to object timely in the manner specified shall be deemed to have waived any objections and foreclosed from making any objections (whether by appeal or otherwise) to the Settlement. *Id.* Class Members who submit a timely Notice of Objection will have a right to appear at the Final Approval Hearing in order to have their objections heard by the Court. *Id.* The Notice makes clear that the court can only approve or deny the settlement and cannot change the terms of the settlement. The Notice also clearly advises class members of the deadline for submission of any objections.

## IV. THE SETTLEMENT MEETS THE PRELIMINARY APPROVAL STANDARD

### A. Judicial Approval of FLSA Collective Action Settlements

The FLSA authorizes an employee to bring a collective action "on behalf of similarly situated employees, but requires that each employee opt-in to the suit by filing a consent to sue with the district court." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000) (citing 29 U.S.C. § 216(b)).

Settlements of FLSA collective action claims require court approval. *Jones v Agilysys, Inc.*, Case No: C 12--03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 9, 2014). The plaintiff must show that he and the proposed class members are "similarly situated." *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 535 (N.D. Cal. 2007).

Federal courts in the Ninth Circuit have adopted a two-tiered approach to determine on a case-by-case basis whether employees are "similarly situated." *Hill v. R & L Carriers, Inc.*, 690 F.Supp.2d 1001, 1009 (N.D. Cal. 2010). The first step is the conditional certification stage, where the court determines if the putative class members are similarly situated and if the putative class

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 355-5200

-20-

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

members should be notified of the opportunity to opt-in to the action." *Jones v Agilysys, Inc.*, Case No: C 12--03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 9, 2014). This is a lenient standard, and may be supported by declarations. *Stanfield v. First NLC Fin. Servs., LLC*, Case No. C 06-2892 SBA, 2006 WL 3190527, at *3 (N.D. Cal. Nov. 1, 2006). The second step is the final certification stage, where the Court determines "the propriety and scope of the collective action using a stricter standard." *Id.*, at *2.

### 1. Conditional Certification of the FLSA Collective Action is Proper

Conditional certification of Plaintiffs' FLSA collective action is appropriate at this first stage because the Class Members are all similarly situated. As stated above, all class member adjusters were uniformly subject to the same policies and procedures. Defendant had the following policies and procedures that applied uniformly to the Class:

- Defendant had a policy of not paying overtime for travel time;
- Defendant had a meal policy that was not compliant;
- Defendant had a rest break policy that was not compliant;
- Defendant had a practice of not keeping accurate records of Class Members' hours of work;
- Defendant had a practice of not providing Class Members with accurate itemized statements including total hours worked and all applicable hourly rates in effect during the pay period; and
- Defendant had a practice of not paying all final wages upon termination or resignation.

Plaintiffs and the eligible Custard adjusters work at various locations throughout California and the United States. The putative class members perform the same tasks regardless of the location they are servicing. Defendant had a common policy of not paying travel time at the regular rate of pay, regardless of whether the adjuster worked more than eight hours per day, or 40 hours per week.

These objectionable wage and overtime violations were applied uniformly to all adjusters working in California and the United States. As a result, they suffered the same injuries in the same manner as a result of the same common policies.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL (945) 355-0200

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

**2.  The Collective and Class Actions Can Proceed Simultaneously**

Although some courts have refused to allow such "hybrid" collective/class action claims to proceed simultaneously, the jurisdictional issues that could arise if many class members chose not to opt in to the FLSA collective action but chose not to opt out of the California class action are not present in this case. *See, Leuthold, supra*, 224 F.R.D. at 470.

Here, if the class member is a member of the FLSA Class, it will retain the right to pursue such claims against the defendant if it does not cash its check for the FLSA Individual Share or California Individual Share. Thus, there are no jurisdictional issues may arise.

**B.  Judicial Approval of Class Action Settlements**

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Proc. § 23(e). Before a court approves a settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2009). Generally, the district court's review of a class action settlement is "extremely limited." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The court considers the settlement as a whole, rather than its components, and lacks authority to "delete, modify or substitute certain provision." *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982)).

At the preliminary approval stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to the class representative or segments of the class, and (4) falls within the range of possible approval. *See Alvarado v. Nederend*, 2011 WL 90228, *5 (E.D. Cal. Jan. 11, 2011) (granting preliminary approval of settlement in wage and hour class action); *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 302-303 (E.D. Cal. 2011) (granting preliminary approval of settlement in wage and hour class action); Joseph M. McLaughlin, *McLaughlin on Class Actions: Law and Practice* § 6.6 (7th ed. 2011) ("Preliminary approval is an initial evaluation

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (945) 335-2200

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

1  by the court of the fairness of the proposed settlement, including a determination that there are no

2  obvious deficiencies such as indications of a collusive negotiation, unduly preferential treatment

3  of class representatives or segments of the class, or excessive compensation of attorneys . . . .").

4  As each of these factors is met here, preliminary approval is appropriate.

### 1. The Settlement Amount Represents A Substantial Recovery

6      Plaintiffs' counsel estimated the maximum potential recovery, including unpaid wages,

7  interest and penalties, for the certified claims to be approximately $31,467,347.85. This includes

8  $19,640,987.85 for the California Class, which specifically contemplates daily violations for meal

9  and rest periods, an average of 10 hours per week of unpaid overtime wages, interest, and waiting

10  time penalties.

11      The estimated maximum FLSA Class recovery is $11,826,360.00, which also assumes 10

12  hours of unpaid overtime wages per week and, in accordance with Defendant's representations,

13  that only 25% of non-California adjusters are commission-only. Given the challenge of proving

14  misclassification in less employee-friendly jurisdictions, and in light of FLSA case law on

15  insurance adjusters, Plaintiffs' counsel estimates the recovery for the FLSA Class would have been

16  further reduced.

17      Regardless, the $2,430,000.00 Maximum Settlement Amount represents nearly 8% of that

18  total amount. The amount of unpaid wages exclusive of interest and penalties is $19,452,907.50,

19  meaning the settlement represents almost 12% of that amount.

20      The significant risk that this Court may deny class certification is obviated by the

21  Settlement. Moreover, continued litigation would very likely reduce and substantially delay

22  recovery by Class Members. In contrast, because of the proposed Settlement, Class Members will

23  receive timely relief and avoid the risk of an unfavorable judgment.

24      Furthermore, while Plaintiffs are confident in the merits of the case, a legitimate

25  controversy exists as to each claim for relief. Plaintiffs also recognize that proving the amount of

26  wages due to each individual Class Member would be an expensive, time-consuming, and

27  extremely uncertain proposition.

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 326-5200

-23-
Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

1      Lastly, the viability of pursuing a class action or a collective action under FLSA was

2   questionable in light of the recent Supreme Court case of *Epic Systems Corp. v. Lewis*, 138 S. Ct.

3   1612 (2018). Therein, the Court ruled that arbitration agreement requiring individual arbitration

4   are enforceable under the Federal Arbitration Act. While Plaintiffs believed that the respective

5   arbitration agreements that they signed allowed them to proceed on a collective basis, the potential

6   existed that a Court might rule that each plaintiff could only pursue an individual claim in

7   arbitration.

8          **2.  The Proposed PAGA Payment to the LWDA is Reasonable**

9      PAGA claims are commonly approved where the gross settlement amount, and monies due

10  to employees as compensatory damages and restitution, vastly outsize the amounts earmarked for

11  the LWDA under PAGA:

12  - *Nordstrom Commission Cases* (2010) 186 Cal.App.4th 576 ($6.405 million cash and $2.5

13      million Nordstrom merchandise vouchers gross settlement; $0 in PAGA penalties);

14  - *Barnwell v. Pacific Ocean Transportation, Inc.* (May 31, 2016) Los Angeles Superior

15      Court, Case No. BC555412 ($110,000.00 gross settlement; $1,500.00 in PAGA Penalties;

16      June 6, 2018 Non-Appearance Case Review re: Distribution);

17  - *Solis v. Rudy's Hollywood, LLC* (Feb. 18, 2017) Los Angeles Superior Court, Case No.

18      BC610643 ($310,000.00 gross settlement; $7,500.00 in PAGA Penalties; Aug. 7, 2017

19      Judgment; No Future Hearings);

20  - *Ambrose v. Associated Ready Mixed Concrete, Inc.* (Oct. 19, 2015) Los Angeles Superior

21      Court, Case No. BC598309 ($300,000.00 gross settlement; $750.00 in PAGA Penalties;

22      June 8, 2017 Judgment; No Future Hearings);

23  - *Mauricio v. Preferred Freezer Services* (July 18, 2014) Los Angeles Superior Court, Case

24      No. BC552083 ($450,000.00 gross settlement; $11,250.00 in PAGA Penalties; July 6,

25      2017 Judgment; No Future Hearings);

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 33-9300

-24-

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 3500
CONCORD, CA 94520
TEL: (925) 285-5200

- *Baumann v. Chased Investments Services Corp., et al.* (July 8, 2011) Los Angeles Superior Court, Case No. BC465806 ($4,500,000.00 gross settlement; $37,500.00 in PAGA Penalties; June 27, 2017 Order re: Amended Judgment Signed Filed; No Future Hearings);

- *Allen v. Caine & Weiner Company, Inc.* (July 19, 2011) Los Angeles Superior Court, Case No. BC464979 ($150,000.00 gross settlement; $2,000.00 in PAGA Penalties; Apr. 23, 2014 Judgment; No Future Hearings);

- *Murphy v. CVS Caremark Corporation, et al* (July 5, 2011) Los Angeles Superior Court, Case No. BC464785 ($12,750,000.00 gross settlement; $50,000.00 in PAGA Penalties; Feb. 28, 2017 Judgment; No Future Hearings);

- *Baker, et al. v. L.A. Fitness International, LLC* (May, 28, 2010) Los Angeles Superior Court, Case No. BC464785 ($5,500,000.00 gross settlement; $18,750.00 in PAGA Penalties; Dec. 12, 2012 Judgment; No Future Hearings);

- *Banda v. Verizon California, Inc.* (Apr. 1, 2010) Los Angeles Superior Court, Case No. BC434587 ($15,000,000.00 gross settlement; $93,811.42 in PAGA Penalties; Jan. 13, 2015 Notice of Entry of Judgment; No Future Hearings);

- *Pickett v. 99 Cents Only Stores* (Nov. 4, 2011) Los Angeles Superior Court, Case No. BC473038 ($1,290,000.00 gross settlement; $75,000.00 in PAGA Penalties; Oct. 1, 2017 Judgment; No Future Hearings);

- *Garcia v. Gordon Trucking, Inc., et al* (Feb. 23, 2010), United States District Court, Eastern District of California, Case No. 1:10-cv-00324-AWI-SKO ($3,700,000.00 gross settlement; $7,500.00 in PAGA Penalties; Oct. 31, 2012 Judgment; Oct. 31, 2012 Case Closed);

- *Franco, et al v. Ruiz Food Products, Inc.* (Dec. 15, 2010) United States District Court, Eastern District of California, Case No. 1:10-cv-02354-SKO ($2,500,000.00 gross settlement; $7,500.00 in PAGA Penalties; May 31, 2012 Judgment; May 31, 2012 Case Closed);

-25-

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 3355200

1    • *Lopez Cruz, et al. v. El Rancho Farms, et al.* (Nov. 28, 2012) United States District Court,

2    Eastern District of California, Case No. 1:12-cv-01934-AWI-JLT ($2,300,000.00 gross

3    settlement; $30,000.00 in PAGA Penalties; Oct. 2, 2015 Order Adopting Grant of Final

4    Approval; Oct. 2, 2015 Case Closed);

5    • *Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.* (Apr. 5, 2013) United

6    States District Court, Eastern District of California, Case No. 2:13-cv-00672-KJM-KJN

7    ($100,000.00 gross settlement; $2,500.00 in PAGA Penalties; Jun. 9, 2015 Judgment; Jun.

8    9, 2015 Case Closed);

9    • *Davis v. Brown Group Retail, Inc., et al.* (Aug. 2, 2013) United States District Court,

10   Eastern District of California, Case No. 1:13-cv-01211-LJO-BAM ($1,500,000.00 gross

11   settlement; $3,750.00 in PAGA Penalties; Nov. 23, 2015 Judgment; Nov. 23, 2015 Case

12   Closed);

13   • *Rodriguez v. Kraft Foods Group, Inc.* (July 18, 2014) United States District Court, Eastern

14   District of California, Case No. 1:14-cv-01137-LJO-EPG ($1,750,000.00 gross settlement;

15   $5,625.00 in PAGA Penalties; Dec. 20, 2016 Judgment; Dec. 20, 2016 Case Closed].)

16   In sum, when the risks of litigation, the uncertainties involved in achieving class

17   certification, the burdens of proof necessary to establish liability, and the probability of appeal of

18   a favorable judgment are balanced against the merits of Plaintiffs' claims, it is clear that the

19   settlement amount is fair, adequate, and reasonable—a substantial recovery for the Class

20   Members. *Id.*

21   **3. The Settlement Was Reached After Informed, Arm's Length Negotiations**

22   The Settlement was reached at a full-day mediation session with an experienced mediator,

23   Mr. David A. Rotman. Even then, the Parties continued to negotiate specific terms, structure, and

24   procedural issues for weeks thereafter. *Id.* These circumstances involved no collusion and show

25   that the settlement negotiations were arm's length and, although conducted in a professional

26   manner, were adversarial. *Id.* The Parties went into the settlement mediation willing to explore the

27   potential for a settlement of the dispute, but Plaintiffs submit that the record in this case shows that

28

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 355-5700

1    each side was committed and prepared to litigate its position through trial and appeal if a settlement

2    had not been reached. *Id.*

3         Plaintiffs also conducted extensive investigation and informal discovery prior to the

4    mediation. Prior to filing the complaint, Plaintiffs' counsel conducted an investigation into the

5    claims alleged, including interviewing Plaintiffs and other employees, reviewing documents

6    provided by Plaintiffs and other publicly-available documents, and conducting legal research

7    regarding the claims and defenses. Based on the information and record developed through

8    extensive investigation and informal discovery, Plaintiffs' counsel was able to act intelligently and

9    effectively in negotiating the proposed Settlement.

10        **4.   The Settlement Does Not Suffer from Any Obvious Deficiencies**

11        The second factor the Court considers is whether there are obvious deficiencies in the

12   settlement. Under the terms of the Settlement, Defendant will pay $2,430,000.00 to resolve this

13   Action. This is a substantial recovery for the Class Members, which takes into consideration the

14   significant risks of proceeding with the litigation, including the risks of maintaining class

15   certification, establishing liability and proving damages, as discussed further below. When the

16   risks of litigation, the uncertainties involved, the burdens of proof necessary to establish liability,

17   and the probability of appeal of a favorable judgment are balanced against the merits of Plaintiff's

18   claims, it is clear that the settlement amount is fair, adequate, and reasonable and that there no

19   deficiencies in the proposed Settlement.

20        **5.   The Settlement's Differentiated Relief Is Based on Objective Criteria**

21        Under the third factor, the Court examines whether the proposed settlement provides

22   preferential treatment to any class member or segment of the class. While the settlement amount

23   is a non-reversionary amount of $2,430,000, the actual value of the settlement is much more

24   significant because, as of January 1, 2018, Defendant changed policies at issue in the litigation.

25   Specifically, after this case commenced, Defendant converted all California insurance adjusters to

26   hourly compensation and issued policies in effort to comply with California overtime and meal

27   and rest period requirements.

28

-27-
Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (982) 335-6300

1    Here, Class Members will be eligible to receive amounts based on the number of

2 workweeks during which, Plaintiffs argue, they did not receive adequate compensation. However,

3 for the California Class, workweeks prior to January 1, 2018 are weighted more heavily than those

4 after (i.e. 1.0 to 0.75) in light of the fact that Defendant's policy changes significantly reduced the

5 number and frequency of violations.

6    Furthermore, given that the California Labor Code provides substantially more protection

7 to employees than the FLSA (and therefore comprises the bulk of alleged violations in these

8 actions), the Settlement allocates 80% to the California Class and 20% to the FLSA Class.

9    Subject to Court approval, the Settlement provides for a service award to Plaintiffs in an

10 amount not to exceed $7,500.00 to Plaintiffs Keith Tyner, Armen Abgaryan, Perry Wadler, Gerald

11 Springer, and Troy Willis, and up to $2,500 for Representative Plaintiff Roy Paiva. Agreement ¶

12 87. The smaller award for Plaintiff Paiva is due to the recency of his filing—August 2, 2018,

13 compared to as early as October 2017 for the other five Plaintiffs—and recognizes the greater time

14 devoted and risk undertook in initiating litigation by Plaintiffs Wadler, Abgaryan, Springer, Willis,

15 and Tyner.

16    This modest payment is for the substantial risk assumed by and the services undertaken by

17 Plaintiff, as well as the substantial benefit conferred on the class as a result of Plaintiff's efforts.

18 The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are

19 permissible and do not render a settlement unfair or unreasonable. *See Staton v. Boeing Co.*, 327

20 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-69 (9th Cir.

21 2009) (finding that the payment of a service award is "fairly typical in class actions."). Finally, the

22 Court will ultimately determine whether Plaintiffs are entitled to the requested service award based

23 on the reasonableness of the amount requested in ruling on Plaintiffs' Motion for Final Approval,

24 in which Plaintiffs will submit additional declarations outlining the efforts expended and risks

25 taken on behalf of the Class Members. *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC,

26 2011 WL 1627973, *9 (N.D. Cal. Apr. 29, 2011). Thus, the absence of any preferential treatment

27 supports preliminary approval.

28

### 6. The Settlement Falls within The Range of Possible Approval

Finally, the Court must consider whether the settlement falls within the range of possible approval. "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1125 (E.D. Cal. 2009) (citing *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007) (internal quotations omitted).

While there are, not surprisingly, different viewpoints of the strengths and weaknesses of the claims (even within Plaintiffs' camp), the consensus among Class Counsel is that the maximum potential recovery to the Class Members could exceed $30 Million should the case proceed to trial. And yet, as this Court well knows, numerous hurdles stand in the way of such a remarkable result, including the risks of achieving and maintaining class certification (particularly after *Epic Systems*), and establishing liability and proving damages. Those realities, coupled with the probability of appeal of a favorable judgment and the time-value of money to the Class members, must be balanced against the merits of Plaintiff's claims. When doing that balancing, it is clear that a $2,430,000.00 non-reversionary settlement sum is within the range of likely approval.

Furthermore, given the lack of records for rest breaks and off-the-clock work, establishing damages would be difficult. While Plaintiff maintains that both liability and the amounts of premium wages due for missed rest periods and overtime may be determined using representative sampling, any proposed methodology would be subject to attack by Defendant in ways that could limit any recovery.

Plaintiffs' claims for penalties under Labor Code sections 226 and 203 are derivative of the rest break, minimum wage, and overtime claims. Therefore, if relief was denied on the underlying claims, Plaintiff would recover no penalties under Labor Code section 226 and 203. To prevail on these claims, Plaintiff also would have to establish that Defendants' violations were "willful" and "knowing and intentional." Lab. Code §§ 203, 226(e)(1) & (e)(3); *see also Willner v. Manpower Inc.* (N.D. Cal. 2014) 35 F.Supp.3d 1116, 1131; *Amaral v. Cintas Corp. No. 2* (2008)

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 355-2900

163 Cal.App.4th 1157, 1203-04 (holding that the employer did not willfully fail to pay wages under Labor Code § 203 even though the class prevailed on the merits on the underlying claim for failing to pay living wages).

Additionally, it is currently unclear whether waiting time and wage statement penalties can be recovered based on a failure to pay premium wages for meal and rest period violations. *See Stewart v. San Luis Ambulance,* Cal. Supreme Court Case No. S246255 (one issue to be decided is whether: "…violations of meal period regulations, which require payment of a "premium wage" for each improper meal period, give rise to claims under sections 203 and 22[6] of the California Labor Code where the employer does not include the premium wage in the employee's pay or pay statements during the course of the violations?").

Finally, continued litigation would inevitably delay payment to the Class Members. The fact that a settlement will eliminate delay and further expenses strongly weighs in favor of approval. *See Rodriguez,* 563 F.3d at 966.

### C.    The Settlement Class Meets the Rule 23 Factors

"When considering whether to give approval to a proposed class action settlement, Federal Rule of Civil Procedure 23(e) 'require[s] the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable.' *In re Celera Corp. Sec. Litig.,* No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *3 (N.D. Cal. Mar. 31, 2015) (citing *In re Mego Fin. Corp. Litig.,* 213 F.3d 454, 458 (9th Cir. 2000)).

### 1.    The Class Is Sufficiently Numerous

Rule 23(a)(1) requires that a proposed class be so numerous that joinder of all class members be impracticable. *Hanlon, supra,* 150 F.3d at 1019; *Gay v. Waiters' & Dairy Lunchmen's Union,* 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd* 694 F.2d 531 (9th Cir. 1982). The Ninth Circuit has stated that numerosity could be satisfied by a class with 174 members, in part because of the "small size of each class member's claims." *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds,* 509 U.S. 810, 113 S.Ct. 2891, 2916 (1982).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 355-5200

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 355-9200

1   Here, the California Class consists of approximately 55 employees whereas the nationwide

2   FLSA class is comprised of about 722 employees, which is sufficiently numerous for settlement

3   purposes. With these numbers, joinder of all Class Members would be impracticable and the

4   relatively small value of each individual claim makes it unlikely that the individual claimants

5   would pursue relief absent class certification, diminishing the prospect that joinder is a feasible

6   alternative.

7   **2.   The Commonality Requirement Is Met**

8   Under Federal Rule of Civil Procedure 23(a)(2), Plaintiffs must show that there is a

9   question of law or fact common to the settlement class, using a permissive standard. *Hanlon*, 150

10   F.3d at 1011, 1019-20 (9th Cir. 1998) (emphasizing the "minimal" requirements and "permissive"

11   interpretation of Rule 23(a)(2)).

12   Plaintiffs may satisfy the commonality requirement by demonstrating either a common

13   legal issue with divergent factual predicates or a common nucleus of facts with divergent legal

14   remedies. *See Hanlon*, 150 F.3d at 1019. The presence of merely one common issue of law or fact

15   is sufficient. *See Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996); *Slaven v. BP*

16   *Am., Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000).

17   Class Members here suffered the same alleged injuries in the same manner; Class Members

18   were deprived of overtime and meal/rest periods, because of Defendant's common policy. In

19   addition, Defendant had a non-compliant meal and rest period policy. All of these improper

20   policies applied unilaterally to all adjusters in the California Class and FLSA Class. (Id.) As a

21   result of these objectionable policies and practices, Plaintiffs and Class Members had been injured.

22   Defendant's policies and procedures among others give rise to the following common

23   questions of law and fact:

24   • Whether Defendant failed to pay overtime;

25   • Whether Defendant violated California Labor Code § 1174 by failing to keep accurate

26   records of Class Members' hours of work;

27

28

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

1       •   Whether Defendant violated Labor Code § 226(a) by failing to provide Class Members

2          with accurate itemized statements including total hours worked and all applicable hourly

3          rates in effect during the pay period;

4       •   Whether Defendant violated Labor Code § 203 by failing to wages upon termination or

5          resignation;

6       •   Whether Defendant violated Business and Professions Code § 17200, et seq. by engaging

7          in unfair, unlawful and/or fraudulent business practices; and

8       •   Whether the Representative Plaintiffs and Class Members are entitled to penalties under

9          the Private Attorney General Act of 2004, California Labor Code § 2698, et seq.

10         Under these specific circumstances, the commonality requirement is satisfied. *Hanlon*, at

11    1019-20; *Gutierrez v. Kovacevich "5" Farms*, 2004 WL 3745224, at *5 (E.D. Cal. Dec. 2, 2004)

12    (finding commonality satisfied where plaintiffs presented common questions of whether

13    defendants failed to pay plaintiffs for all time worked); *see Rainbow Bus. Solutions v. Merch.*

14    *Servs*, 2013 U.S. Dist. LEXIS 179288, *15 (N.D. Cal. 2013) (shared legal issues with divergent

15    factual predicates sufficient for class certification); *Tierno v. Rite Aid Corp.*, 2006 U.S. Dist.

16    LEXIS 71794 (N.D. Cal. Aug. 31, 2006) (certifying a class of retail store managers with common

17    wage and hour claims).

18         **3.  The Typicality Requirement Is Met**

19         The typicality requirement of Rule 23(a)(3) is met if the claims of the named representative

20    are typical of those of the class, though "they need not be substantially identical." *Hanlon*, 150

21    F.3d at 1020. In deciding whether individual variations preclude typicality, the focus should be on

22    the behavior of the defendants. *Day v. NLO*, 851 F.Supp. 869, 884 (S.D. Ohio 1994). Plaintiff's

23    claims are typical of the claims of the whole class because they arise from the same factual basis

24    and are based on the same legal theories as those applicable to the other class members. *See Wehner*

25    *v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).

26         All Plaintiffs, like the other Class Members, were adjusters subjected to the same

27    employment policies and procedures concerning overtime, travel time and rest periods. Thus, the

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 355-5200

claims of Plaintiffs and Class arise from the same course of conduct by Defendant, involve the same employment practices, and the same legal theories. Defendant also maintained improper on-call policies.

As a result of Defendant's policies Plaintiffs worked without compensation in the same manner as all the other Class Members. Thus, the typicality requirement is also satisfied.

### 4. The Adequacy Requirement Is Met

The adequacy requirement of Rule 23(a)(4) is met if the Class Representative and Class Counsel have no interests adverse to the interests of the Class Members and are committed to vigorously prosecuting the case on behalf of the class. *Hanlon*, 150 F.3d at 1020.

At all times, Plaintiffs served unselfishly as the champions of the Class, there are no facts suggesting that either Plaintiffs or Class Counsel have any potential or actual conflicts of interests with the Class Members. Plaintiffs are well aware of their duties as the representatives of the Class and actively participated in the prosecution of this case to date. They effectively communicated with Class Counsel, providing documents to Class Counsel and participated extensively in discovery and investigation of the Action. Plaintiffs also retained competent counsel who have extensive experience in employment class actions. Class Counsel has extensive experience in class action litigation in California. In addition, there is no antagonism between the interests of the Plaintiffs and those of the Class.

### 5. Common Issues Predominate Over Individual Issues

In addition to the Rule 23(a) requirements, a Court must also find that common issues of law or fact predominate over any questions affecting only individual members." Fed. R. Civ. P. Rule 23(b).

Class certification is authorized where common questions of law and fact predominate over individual questions. *Hanlon*, 150 F.3d at 1022-23. The test is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. The proposed class in this case is sufficiently cohesive because all Class Members' claims share a "common nucleus of facts and potential legal remedies," as was present in *Hanlon*, where the Ninth Circuit approved class

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 335-5200

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

1  certification under the standards set forth in *Amchem Products v. Windsor*, 521 U.S. 591, 117 S.Ct.

2  2231 (1997).

3      In the context of wage and hour litigation, courts have often found that common issues

4  predominate where an employer treats the putative class members uniformly, even where the party

5  opposing class certification presents evidence of individualized variations. *See e.g. Ghazaryan v.*

6  *Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524, 1538 (2008) (wage and hour claims "routinely

7  proceed as class actions"); *Prince v. CLS Transportation, Inc.*, 118 Cal.App.4th 1320, 1329

8  (2004); and, *Estrada v. FedEx Ground Package System, Inc.*, 154 Cal.App.4th 1, 14 (2007).

9      There are common issues of law and fact that Plaintiffs and all Class Members were

10  subjected to in this case. The principal issues of controversy include whether class members

11  received all wages at the proper rate and proper meal and rest periods. Plaintiffs contends that

12  Defendant engaged in a uniform course of conduct with respect to the employees which resulted

13  in a systematic failure to provide compensation and other employee benefits as required by law

14  and that Defendant's policies with respect to these issues are uniform. These issues are suitable for

15  common adjudication because the liability question and defenses for all Class Members are the

16  same. Class Members all worked as "adjusters" during the relevant time period and thus were

17  subject to the same employment policies and practices. The only question is whether Defendant's

18  conduct supports a meritorious claim for liability. Such suits challenging the legality of a

19  standardized course of conduct are generally appropriate for resolution by means of a class action.

20  Accordingly, common issues of law and fact predominate.

21      **6.   Class Settlement Is Superior to Other Methods of Resolution**

22      To certify a class, the Court must also determine "that a class action is superior to other

23  available methods for the fair and efficient adjudication of the controversy." F.R.C.P. Rule

24  23(b)(3). To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors

25  for courts to consider:

26      (A) [T]he interest of members of the class in individually controlling the prosecution . . .

27  of separate actions; (B) the extent and nature of any litigation concerning the controversy already

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 555-5900

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

1    commenced by . . . members of the class; (C) the desirability . . . of concentrating the litigation of

2    the claims in the particular forum; and (D) the difficulties likely to be encountered in the

3    management of a class action. Fed. R. Civ. Prov. Rule 23(b)(3)(A)-(C).

4         Particularly in the settlement context, class resolution is superior to other available methods

5    for the fair and efficient adjudication of the controversy. *See Hanlon*, 150 F.3d at 1023.

6         Here, the alternative methods of resolution are individual suits for relatively small amounts

7    or individual arbitration. These claims "would prove uneconomic for potential plaintiffs" because

8    "litigation costs would dwarf potential recovery." *Hanlon*, 150 F.3d at 1023.

9         There is little interest or incentive for Class Members to individually control the

10   prosecution of separate actions. Although the injury resulting from Defendant's policies and

11   practices are real and significant, the cost of individually litigating such a case against Defendant

12   would easily exceed the value of any relief that could be obtained by any one Class Member

13   individually. (Id.) Each Class Member's individual claim is too small to justify the potential

14   litigation costs that would be incurred by prosecuting these claims individually. *See Local Joint*

15   *Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas*, 244 F.3d 1152, 1163 (9th Cir. 2001)

16   (holding class member's individual recovery of about $1,330 was small and that if plaintiffs cannot

17   proceed as a class, some-perhaps most--will be unable to proceed as individuals).

18        In addition, because the claims of each Class Member in this case are virtually identical,

19   no one member of the Class would have a materially greater interest in controlling the litigation.

20   *See Westways World Travel, Inc. v. AMC Corp.*, 218 F.R.D. 223, 240 (C.D. Cal. 2003). Further,

21   Plaintiffs are unaware of any other similar actions.

22        Finally, the question here is whether "reasonably foreseeable difficulties render some other

23   method of adjudication superior to class certification." *In Re Prudential Ins. Co. of Am. Sales*

24   *Practice Litig.*, 962 F.Supp. 450, 525 (D. N.J. 1997).

25        As the Supreme Court has held, manageability will not foreclose certification for settlement

26   purposes. *See Amchem Prods., Inc. v. Windsor*, *supra*, 521 U.S. at 560 ("Confronted with a request

27   for settlement-only class certification, a district court need not inquire whether the case, if tried,

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1600
CONCORD, CA 94520
TEL: (925) 335-6200

-35-
Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1900
CONCORD, CA 94520
TEL: (925) 835-5200

1 would present intractable manageable problems, *see* Fed. R Civ. Proc., Rule 23(b)(3)(D), for the

2 proposal is that there be no trial."). Therefore, there are no serious manageability difficulties

3 presented by preliminarily approving the case for settlement purposes. As this case will not go to

4 trial if finally approved, all that would remain is claims administration and responding to possible

5 objectors.

6       For these reasons, this matter should be certified for settlement purposes.

7 **V.    THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE**

8       Adequate notice is critical to court approval of a class settlement under Rule 23(e). *Hanlon*,

9 150 F.3d at 1025. The threshold requirement concerning the sufficiency of class notice is whether

10 the means employed to distribute the notice is reasonably calculated to apprise the class of the

11 pendency of the action, of the proposed settlement, and of the class members' rights to opt out or

12 object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974). In this Circuit, notice is

13 satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those

14 with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C.*

15 *v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Mendoza v. United States*, 623 F.2d 1338, 1352

16 (9th Cir. 1980)).

17       The Notice of Settlement satisfies these content requirements. The notice is written in

18 simple, straightforward language that, among other things, includes: (1) basic information about

19 the Action, (2) a description of the benefits provided by Settlement, (3) an explanation of how

20 Class Members can obtain benefits under the Settlement, (4) an explanation of how Class Members

21 can exercise their right to object to the Settlement, (5) an explanation that any claims against

22 Defendants that could have been litigated in this action will be released if the Class Member does

23 not request exclusion from the Settlement, (6) the names of Class Counsel and information

24 regarding the requested attorneys' fees and expenses and Plaintiff's service payment, (7) the Final

25 Approval Hearing date, (8) an explanation of eligibility for appearing at the Final Approval

26 Hearing, and (9) contact information to obtain additional information. See, Cole Decl., Ex. B. As

27 the Notice of Settlement provides Class Members with sufficient information to make an informed

28

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

1  and intelligent decision about the Settlement, it satisfies the content requirements of Rule 23(e)

2  and satisfies all due process requirements. *See In re Wells Fargo Loan Processor Overtime Pay*

3  *Litig.*, 2011 WL 3352460, at *4 (N.D. Cal. Aug. 2, 2011); *Rodriguez*, 563 F.3d at 963 (where class

4  notice communicated the essentials of the proposed settlement in a sufficiently balanced, accurate,

5  and informative way, it satisfied due process concerns).

6       Additionally, the Settlement Administrator shall mail copies of the Class Notice Packet to

7  all Class Members via regular First-Class U.S. Mail. Agreement ¶ 66. Direct mail notice to Class

8  Members' last known addresses is the best notice possible under the circumstances. *See Mullane*

9  *v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950); *Eisen v. Carlisle & Jacquelin*,

10  417 U.S. 156, 173-76 (1974).

11       In sum, the contents and plan for dissemination of the Notice Packet constitute the best

12  notice practicable under the circumstances and fully comply with the requirements of Rule 23.

13

14  **VII.   CONCLUSION**

15       For the reasons set forth above, Plaintiffs respectfully request that the Court (1) grant the

16  Relief sought above, including preliminary approval of the Settlement and approve the use of its

17  exhibits, (2) approve the content and plan for distribution of the Notice Packet, (3) appoint class

18  counsel, representative plaintiffs and a claims administrator, (4) conditionally certifying the classes

19  and (5) schedule a Final Approval Hearing.

20       *Respectfully submitted by:*

21

22  Dated: January 16, 2019          **SCOTT COLE & ASSOCIATES, APC**

23

24                By:

25                   Scott Edward Cole, Esq.
                      Attorneys for Plaintiff Keith Tyner

26                      and the Putative Classes

27

28

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 355-9200

**LAW OFFICES OF HERBERT HAFIF, P.C.**

By: _____/Greg K. Hafif/_____
Greg K. Hafif, Esq.
Attorneys for Plaintiff Armen Abgaryan

**LAW OFFICE OF LARRY A. SACKEY**

By: _____/Larry A. Sackey/_____
Larry A. Sackey, Esq.
Attorneys for Plaintiff Armen Abgaryan

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE COLE BUILDING
1485 CIVIC COURT, SUITE 1500
CONCORD, CA 94520
TEL: (925) 855-2600

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement